RIVEREDGE ASSOCIATES, Plaintiff,

v.

METROPOLITAN LIFE INSURANCE COMPANY, Defendant.

Civ. A. No. 90–2213.

United States District Court, D. New Jersey.

Jan. 15, 1991.

Richard D. Wilkerson, Lowenstein, Sandler, Kohl, Fisher & Boylan, Roseland, N.J., for plaintiff.

Ronald H. Wilcomes, Ronald M. Sturtz, Hannoch Weisman, Roseland, N.J., for defendant.

## OPINION

WOLIN, District Judge.

Plaintiff Riveredge Associates ("Riveredge") and defendant Metropolitan Life Insurance Company ("Metropolitan") have cross-moved for summary judgment. The Court will grant Metropolitan's motion and deny Riveredge's motion.

## I. BACKGROUND

This case involves the financing and suggested refinancing of Riveredge Plaza Associate ("Plaza"), a New Jersey general partnership formed on or about February 23, 1984 by Riveredge and Metropolitan for the purpose of acquiring and developing real estate located at 25 Vreeland Road in Florham Park, Morris County, New Jersey ("the Property"). Two commercial office buildings are located on the Property owned by Plaza.

Plaintiff Riveredge is a New Jersey general partnership comprised of several individual general partners. Defendant Metropolitan, a New York corporation, is a large, nationally known insurance company with substantial real estate investment holdings. Metropolitan has offices throughout the United States, including New Jersey. Its headquarters are located at One Madison Avenue, New York, New York.

Riveredge and Metropolitan entered into a Partnership Agreement dated February 23, 1984. Section 4.01 of the Partnership Agreement provides that Riveredge is a general partner of Plaza and the owner of a 30 percent interest in the partnership, and Metropolitan is a general partner of Plaza and the owner of a 70 percent interest in the partnership. Section 1.02(b) of the Partnership Agreement defines the scope of the general partnership as "the acquisition and development of the Proper-

ty and the leasing, sale, financing, operation and management of the Property and Improvements ... for investment and production of income and profit...."

Section 2.01(a) of the Partnership Agreement provides that the partners will collectively control the business and affairs of the partnership. Section 2.01(b) requires the approval of both partners as to "Major Decision," and defines "Major Decisions" to include, *inter alia:* "Financing of the Venture [*i.e.,* the partnership], including but not limited to interim and long-term financing or refinancing of the Improvements and financing the operations of the Venture...."

In addition to its status as 70 percent general partner, Metropolitan is the holder of a mortgage on the partnership Property in the original principal amount of $11,500,000. This mortgage carries interest at the rate of 15.125 percent. Metropolitan agreed to make the mortgage loan pursuant to a written Commitment dated October 28, 1982, and the loan is evidenced by a Note and Mortgage, both of which are dated February 23, 1984. At the closing of the loan from Metropolitan to Riveredge on February 23, 1984, Riveredge executed and delivered the $11,500,000 Note and Mortgage. Following the closing of the loan, Plaza was formed as a partnership between Riveredge and Metropolitan, and the Property owned by Riveredge was conveyed to Plaza, subject to the Mortgage and the Note it secured. Plaza is now the Mortgagor and makes the monthly mortgage payments.

The Note provides prepayment of the Mortgage loan without penalty after 14 years: "Maker shall have the privilege of paying the entire principal balance evidenced by this Note but not a part thereof on the first day of any month commencing with the first day of the first month of the fifteenth (15th) Loan Year...." Rider, ¶ 2(a). The Note contains the following provision regarding prepayment, with a 5 percent prepayment fee, upon the occurrence of an Event of Default:

Maker agrees that if an Event of Default (as defined in the Mortgage, such defini-

tion being incorporated herein by reference and made part hereof) shall occur and the maturity hereof shall be accelerated, then a tender of payment by Maker or by anyone on behalf of the Maker of the amount necessary to satisfy all sums due hereunder made at any time prior to judicial or public sale of the real and/or other property mortgaged under the Mortgage shall constitute an evasion of the payment terms hereof and shall be deemed to be a voluntary prepayment hereunder, and any such payment, to the extent permitted by law, therefore must include the fee required under the prepayment privilege, or if at that time there be no such privilege of prepayment, then such payment, to the extent permitted by law, must include a fee of five per cent (5%) of the then unpaid principal balance of this Note.

The Note also contains the following acceleration clause:

And it is hereby expressly agreed that upon the failure of the Maker to pay any sum herein specified, when due, or upon a breach of any other of the terms, covenants, conditions, provisions, stipulations, promises and agreements of this Note, the Mortgage, or any other instrument given as collateral security for the obligation evidenced by this Note, the entire principal debt, or so much thereof as may remain unpaid at the time, and all interest thereon, shall, at the option of the Holder, become due and payable immediately, and payment of said principal debt, or the unpaid principal balance thereof, and all interest thereon, together with all other sums due under the terms hereof, the Mortgage, or any other instrument given as collateral security for the obligation evidenced by this Note may be enforced and recovered at once, time being of the essence.

Section 12 of the Mortgage defines "Events of Default" to include, *inter alia*, failure to make payments when due, failure to perform any other obligation, or occurrence of any default under the Note. Section 48 of the Mortgage states in full:

Metropolitan Life Insurance Company, in its capacity as Mortgagee, shall not be deemed to have additional duties or obligations, nor shall its rights be diminished or otherwise adversely affected by reason of Metropolitan Life Insurance Company being, or becoming, a partner of the Mortgagor.

Counsel for Riveredge issued Metropolitan a legal opinion letter stating that the Note and Mortgage, among other documents, were "legal, valid, binding and enforceable in accordance with their terms."

The interest rate provided for in the Note is 15.125 percent. According to the Certification of Lester Lieberman in Support of Plaintiff's Motion, ¶ 4, interest rates of less than 10 percent are available to refinance the mortgage. Even if Plaza paid the five percent prepayment fee, it would be better off refinancing the mortgage. *Id.* ¶ 6. Metropolitan, however, has refused to refinance with or without a five percent penalty. *See id.* Plaintiff has brought this suit to compel Metropolitan to accept prepayment under theories of fiduciary duty and breach of the Partnership Agreement.

## II. DISCUSSION

The parties have cross-moved for summary judgment under Rule 56 of the Federal Rules of Civil Procedure and agree that no material facts exist to preclude summary judgment. The Court concurs that because the dispute is strictly one of contract interpretation, it presents pure issues of law amenable to summary judgment. The Court also holds that it has removal jurisdiction over this case under 28 U.S.C. § 1441. Riveredge is a general partner comprised of individuals who are citizens of New Jersey, and Metropolitan is a New York corporation whose main place of business is in New York. Although the complaint appears to name Plaza as a plaintiff—a jurisdictional fact that would destroy diversity, since Metropolitan is one of the partners in Plaza—the parties have stipulated that Plaza is not a party hereto, and that its joinder is not necessary to the resolution of this case.

■ The parties have argued a great deal about their fiduciary duties to each

other as partners and especially about Metropolitan's duties to Riveredge. However, Riveredge does not argue that, merely by virtue of Metropolitan's status as Riveredge's partner, Metropolitan must therefore allow a refinancing of any loan.[1] Plaintiff concedes that a partner may be a creditor of the partnership. Plaintiff's Brief at 24 (citing *Sieghortner v. Weissenborn,* 20 N.J.Eq. 172 (Ch.), *modified,* 21 N.J.Eq. 483 (E. & A.1869)). Plaintiff also admits that partners may define the parameters of their rights and duties by agreement. *Id.* (citing N.J.S.A. 42:1–18). Indeed, the Mortgage, ¶ 48, states that Metropolitan, in its capacity as mortgagee, shall not have additional duties to Riveredge by reason of being Riveredge's partner. Thus, although plaintiff makes much of the fact that the Partnership Agreement, ¶ 2.01, provides for collective decisionmaking as to refinancing, Metropolitan need not do anything with respect to the refinancing that is not provided for by the Note and Mortgage.

■ Because Metropolitan need make no special financial efforts on the partnership's behalf by reason of its status as a partner, the Court may look past the question of fiduciary duty to the question of the parties' rights and duties under the Note and Mortgage. If Plaza has the right to prepay and suffer the penalty under the terms of the Note and Mortgage, then the Court can revisit the question of whether Metropolitan's refusal to do so constitutes breach of fiduciary duty. If, however, the Note and Mortgage do not permit Plaza to prepay,[2] then the Court does not need to reach the fiduciary duty issue. Although the parties do not expressly agree on this approach, the Court infers such an agreement from an exchange of hypotheticals in their briefs. Metropolitan concluded its initial submission with a hypothetical question: "could Riveredge ... maintain this action to compel any other lender to permit refinancing of a Note and Mortgage if the

lender were not its partner?" Brief at 24. Riveredge answered this question with "an emphatic and unequivocal *YES.*" Reply Brief at 3 (emphasis in original). The Court agrees with Riveredge that its case on the interpretation of the Note and Mortgage does not depend on its partnership relationship with Metropolitan. However, the Court disagrees as to Riveredge's "yes" because it concludes that the terms of the Note and Mortgage would not compel any lender to refinance.

The Court, then, will proceed to whether the Note and Mortgage provide for a borrower with no special relationship to the lender to compel that lender to accept a voluntary prepayment within 14 years and a five percent penalty, within the terms of the Note and Mortgage before the Court. Riveredge argues that the Note and Mortgage do so provide. Metropolitan's first line of defense is that the "Note expressly provides that prepayment of Metropolitan's loan cannot occur until after fourteen years expire." Metropolitan's Reply Brief at 12. The question is not that simple. What the Note expressly provides is that the loan *may* be voluntarily prepaid after 14 years. Note Rider ¶ 2(a), *quoted supra.* It is quite a stretch to say this provision states (let alone expressly) that Riveredge may not voluntarily prepay the loan earlier even if it also tenders a penalty.

The Note provision that discusses the penalty for prepayment states, with emphasis added:

> Maker agrees that *if an Event of Default ... shall occur and the maturity hereof shall be accelerated,* then a tender of payment by Maker or by anyone on behalf of the Maker of the amount necessary to satisfy all sums due hereunder made at any time prior to judicial or public sale of the real and/or other property mortgaged under the Mortgage shall constitute an evasion of the payment terms hereof and shall be deemed to be a voluntary prepayment

---

**1.** Even more fundamentally, Riveredge does not claim under any theory that the partnership has the right to prepay within 14 years without a penalty.

**2.** Unless otherwise indicated, the term "prepay," as used herein, means prepay voluntarily within the first 14 years, and with a five percent penalty.

hereunder, and any such payment, to the extent permitted by law, therefore must include the fee required under the prepayment privilege, or if at any time there be no such privilege of prepayment, then such payment, to the extent permitted by law, must include a fee of five per cent (5%) of the then unpaid principal balance of this Note.

This provision does not mean, as Riveredge argues, that upon an Event of Default, the Note will automatically be accelerated and plaintiff may (or must) prepay the balance with a five percent penalty. The underscored language makes such a prepayment conditional upon the acceleration of the maturity of the Note as well as an Event of Default. Riveredge cannot accelerate the maturity unilaterally. Moreover, paragraph 48 of the Mortgage precludes a judicial finding that Metropolitan's fiduciary duty requires it to permit an acceleration. The Note states, again with emphasis added, that, upon failure of the maker to pay any sum when due, "the entire principal debt, or so much as may remain unpaid at the time, and all interest thereon, shall, *at the option of the Holder*, become due and payable immediately...." Because acceleration of the Note is at Metropolitan's option, it need not accelerate payment upon an Event of Default, at least not an Event of Default involving failure to make a payment when due.

Even with respect to other Events of Default, the law of New Jersey is that acceleration clauses are entirely for the benefit of the mortgagee. *Cox v. Kille*, 50 N.J.Eq. 176, 177, 24 A. 1032 (Ch. 1892), *cited in* R. Cunningham & S. Tischler, 29 *N.J. Practice* § 172 at 768 n. 32 (1975). In *Cox*, the mortgagor, like Riveredge here, attempted to trigger a default and acceleration in order to prepay.

> It is urged that because the bond provides that, in case the interest remains due and unpaid for the space of 30 days, then the principal shall become instantly due and payable, without saying that it shall become so payable at the option of the holder of the bond, the obligor may consider the principal as due, and discharge the bond.

50 N.J.Eq. at 176–77, 24 A. 1032. The court rejected the plaintiff's argument and allowed the bondholder to foreclose on the mortgage securing payment of the bond only to the extent of the interest due on the bond. In support of its holding, the court cited to "the general doctrine that equity will not permit a party to allow a party to take advantage of his own wrong." 50 N.J.Eq. at 177, 24 A. 1032.

*Cox v. Kille* is consistent with the New Jersey statutory scheme, which expressly provides for partial foreclosures. Pursuant to N.J.S.A. 2A:50–40, when a mortgagor defaults on the payment of an interest installment, the mortgagee may elect to foreclose the mortgage only to the extent that any interest is due and unpaid. A judgment entered under this provision would include only the amount of unpaid interest due under the terms of the mortgage to the date of the judgment, and costs. The mortgage would not be deemed to have merged in the judgment, but would remain in full force and effect as security for the payment of the unpaid principal, with interest accruing after the date of the judgment. N.J.S.A. 2A:50–41. Similarly, the mortgagee may elect to foreclose the mortgage only to the extent that principal is due and unpaid. N.J.S.A. 2A:50–43. Again, the mortgage will not be deemed to have merged in the judgment, but will remain in full force and effect as security for the remaining principal due, with interest. N.J.S.A. 2A:50–44. The Court concludes that acceleration is entirely within Metropolitan's power.

Riveredge points out that an Event of Default and acceleration, in the terms of the Note, "shall constitute an evasion of the payment terms ... [of the Note] and shall be deemed to be a voluntary prepayment...." That the prepayment is "deemed" to be voluntary does not mandate the conclusion that prepayment may be unilateral. As discussed *supra*, the general rule is that acceleration is entirely at the mortgagee's option. The use of "deem" in conjunction with "voluntary" supports the conclusion that prepayment, in fact, may not be voluntary, but that the

maker of the Note shall be treated as if it consents to it. Although the term "voluntary" is indeed awkward, it is not sufficient to overcome the general rule that acceleration is at the mortgagee's option.

Moreover, Metropolitan points out that the term "evasion" does not support Riveredge's argument for its right to prepay unilaterally. The Restatement of Contracts (Second), § 205, "Duty of Good Faith and Fair Dealing," states in its entirety: "Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." The New Jersey Supreme Court has held that "in every contract there exists an implied covenant of good faith and fair dealing." *Association Group Life, Inc. v. Catholic War Veterans of the United States of America*, 61 N.J. 150, 153, 293 A.2d 382 (1972) (*quoting* 5 *Williston on Contracts* § 670, 159–60 (3d ed. 1961)). Comment (d) to the Restatement, "Good faith performance," reads in relevant part, with emphasis added:

> *Subterfuges and evasions violate the obligation of good faith in performance even though the actor believes his conduct to be justified.* But the obligation goes further: bad faith may be overt or may consist of inaction, and fair dealing may require more than honesty. A complete catalogue of types of bad faith is impossible, but the following types are among those which have been recognized in judicial decisions: *evasion of the spirit of the bargain,* lack of diligence and slacking off, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance.

*Accord Catholic War Veterans,* 61 N.J. at 154, 293 A.2d 382 (requirement of fair dealing precludes tactics which are not contemplated by the spirit of the contract). Thus, the Note's reference to an "evasion of the payment terms" of the Note does not militate in favor of the permissibility of the result Riveredge seeks.[3]

---

3. Metropolitan argues that Riveredge's institution of this action constitutes a violation of the implied covenant. Metropolitan's Reply at 20.

The Court holds as a matter of law that Plaza does not, without Metropolitan's consent, have the right to prepay. Therefore, as discussed *supra,* Riveredge cannot compel Metropolitan to accept prepayment by virtue of their partnership in Plaza. The Court need not determine whether Metropolitan's refusal to allow the partnership to seek a repayment constitutes a breach of its fiduciary duty to Riveredge.

## III.   CONCLUSION

The motion for summary judgment of plaintiff Riveredge Associates will be denied and the motion for summary judgment on behalf of Metropolitan Life Insurance Company will be granted. This cause of action will be dismissed with prejudice.

The Court need not address this line of argument.