FRANK BRISCOE COMPANY, INC., a New Jersey corporation, Plaintiff,

v.

THE TRAVELERS INDEMNITY COMPANY and The Travelers Companies, Connecticut corporations, Defendants,

Gabriel R. Calafati, Additional Defendant on Counterclaim.

No. Civ.A. 93–5222(JAG).

United States District Court, D. New Jersey.

Sept. 13, 1999.

Jonathan L. Goldstein, Matthew E. Moloshok, Hellring, Lindeman, Goldstein & Siegal, LLP, Newark, NJ, for plaintiff.

Frederic S. Kessler, Tompkins, McGuire & Wachenfeld, Newark, NJ, Arthur S. Friedman, Susan J. Schwartz, Robert A. Scher, Friedman, Wang & Bleiberg, P.C., New York City, for defendants.

## AMENDED OPINION

GREENAWAY, District Judge.

### INTRODUCTION

This matter concerns an on-going contractual dispute between Plaintiff, Frank Briscoe Company, Inc. ("Briscoe"), and Defendants, The Travelers Indemnity Company and The Travelers Companies (collectively "Travelers"). The Court previously has issued several Opinions and Orders in this matter, including *Frank Briscoe Co., Inc. v. Travelers Indem. Co.*, 899 F.Supp. 1304 (D.N.J.1995) (hereinafter the "Agency Opinion"). The matter now comes before the Court on Travelers' four motions for partial summary judgment and Briscoe's motion for partial summary judgment. Travelers seeks summary judgment on Briscoe's entire Complaint and the award of various items of recovery on its counterclaims. Briscoe seeks summary judgment (1) on Travelers' counterclaims, (2) on certain defenses that Travelers asserts and (3) on various forms of relief requested in its Complaint. For the reasons set forth below, Travelers' motions are granted in part and denied in part. Likewise, Briscoe's motions are granted in part and denied in part.

## BACKGROUND

The Agency Opinion sets forth a detailed account of the facts preceding the instant motions. However, for purposes of clarity, a brief overview of those events and the background facts shall be set forth.

Briscoe was a renowned construction company. Among its many major projects were two of the Gateway office buildings in Newark, New Jersey, and Giants Stadium and Meadowlands Race Track in East Rutherford, New Jersey. Since the early 1970s, Travelers provided Briscoe with payment and performance bonds for Briscoe's construction contracts. In late 1979, Briscoe encountered severe financial troubles. As a result, Briscoe became unable to meet its obligations. Travelers estimated that, if Briscoe should default on its various construction projects, its potential exposure based on the outstanding bonds would be approximately $100 million. To avoid this possibility, Travelers chose to assist Briscoe with a series of loans totaling approximately $24 million. In exchange for the loans, Travelers obtained a security interest in all of Briscoe's assets. The parties memorialized their agreement in the "Loan and Security Agreement" (as amended and supplemented).

The Loan and Security Agreement provided that Briscoe would make monthly interest payments on the loans. Briscoe eventually failed to make the scheduled monthly payments and defaulted. At the time of default, Briscoe owed Travelers $22 million in loan principal and $6 million in accrued interest. Travelers, as a secured creditor, chose to take possession of all of Briscoe's assets (the collateral for the loans) and to liquidate them. In an effort to avoid bankruptcy and the discontinuation of its business, Briscoe desired to participate in the disposal of its assets.

Travelers agreed to allow Briscoe to participate in the disposition of the collateral. Travelers believed Briscoe's argument that it (Briscoe) was in the best position to help Travelers successfully liquidate the various assets. Those assets included, among other things, payment for completion of construction projects and legal claims against land owners that had failed to pay Briscoe for construction work. The parties entered into the "Agreement for Disposition of Collateral" ("ADC") on August 2, 1982. The ADC set forth a procedure ("Program") for the disposition of Briscoe's assets and the deposit of liquidated funds with Travelers. The ADC provided, among other things, that Briscoe would receive a fee for its participation and also receive funding to complete the Program.[1] The parties also agreed that Briscoe would receive a 50% share of the net Program proceeds ("Entitlement"), minus certain set-offs, upon completion of the Program.[2] Furthermore, Travelers agreed to forebear on any deficiency that Briscoe might owe it upon the completion of the Program.[3] The parties' ongoing dispute has centered around the interpretation of, and performance required of the parties by, the ADC.

### Agency Opinion

After a two day trial, Judge Wolin issued the Agency Opinion. In that Opinion, he considered Briscoe's claim that it was entitled to accumulated interest on all of the funds deposited with Travelers pursuant to the ADC. *Briscoe*, 899 F.Supp. at 1307. Briscoe asserted that it and Travelers were partners in the ADC and, therefore, Travelers was required to accrue interest for Briscoe on the Program proceeds. *Id.* By 1995, Briscoe had collected and deposited over $84 million with Travelers. Briscoe claimed that it was entitled to $400 million in interest on those gross proceeds. *Id.*

To make a decision on Briscoe's claim, the Court first sought to determine wheth-

---

1. *See* ADC ¶¶ 8, 9.

2. *See* ADC ¶¶ 9, 11.

3. *See* ADC ¶¶ 6.3.

er the ADC was a clear, unambiguous, enforceable contract. *Id.* at 1308. The Court examined (1) the contract itself, (2) the parties' pre-execution conduct and (3) the parties' post-execution conduct. *Id.* at 1309. The Court noted that the negotiation of the ADC took well over a year, and that both sides were represented by counsel throughout the negotiations. *Id.*

Construing the express language of the ADC, the Court concluded that "Travelers owns the money deposited under the ADC as a secured creditor. Any interest earned on the money after it was deposited is the sole and exclusive property of Travelers." *Id.* at 1316. This conclusion did not end the Court's inquiry. Noting that the U.C.C. did not alter the Court's interpretation of the ADC, the Court next examined the parties' conduct. *Id.* at 1317. The Court found that the parties' pre-execution conduct evidenced that Travelers had rejected several attempts by Briscoe to include an interest component into the ADC. *Id.* at 1323. Further, the Court found that in late 1989, William F. Kelly distributed a Briscoe internal memorandum in which he proposed several ways to interpret the ADC that would allow Briscoe to increase its recovery. *Id.* That memorandum, coupled with Briscoe's silence with respect to interest until 1989, led the Court to conclude that Briscoe was making "an after-the-fact attempt ... to earn more money under the ADC." *Id.* The Court found that "the post-execution conduct of the parties demonstrates that after the Program dragged on far longer than anyone anticipated, Briscoe began to search for ways to maximize its share." *Id.* at 1325.

The Court also analyzed the trial testimony of the parties. *Id.* at 1325–1332. The Court found the testimony of Briscoe's two witnesses, Howard Loeffler, former Travelers employee, and Gabriel Calafati,

Briscoe President, not credible. *Id.* at 1325–1330, In contrast, the Court found the testimony of Travelers' witness, Mark Larner, the ADC's scrivener, "highly convincing." *Id.* at 1332. Larner testified, among other things, that the ADC follows the U.C.C. and was designed to articulate Travelers' rights after Briscoe's default under the Loan and Security Agreement. *Id.* at 1330. The Court held that Briscoe could not imply terms into the ADC based on the unsupported contention that the driving force behind the ADC was Travelers' fear of third-party claimants.[4] *Id.* at 1332.

The Court held that Travelers, as the exclusive owner of all money deposited under the ADC, had no duty to accrue interest on Briscoe's behalf. *Id.* at 1334. The Court based its holding on, among other things, the following factual and legal conclusions: (1) the ADC language and meaning was clear and unambiguous; (2) the ADC created an agency relationship whereby Briscoe was Travelers' agent; and (3) Travelers was the owner of all of the collateral under the ADC. *Id.*

### Briscoe's Complaint

The Agency Opinion disposed of Briscoe's claim seeking interest on the Program proceeds deposited with Travelers. The Agency Opinion also set forth the Court's conclusions that the ADC was the clear and complete expression of the parties' agreement, and that the parties' relationship would be governed by the terms of the ADC. As such, this Court now sets forth Briscoe's claims that survived the Agency Opinion.

Briscoe's Complaint seeks the following relief:

(1) Count One—specific performance, forcing Travelers to (a) fund the Program, (b) support Briscoe's prosecution

---

4. Despite the Court's earlier finding that "Travelers' alleged fear of third-party claimants was not a driving force behind the formation of the ADC", *Briscoe*, 899 F.Supp. at 1332, Briscoe continues to belabor the point.

This Court finds no persuasive basis to reconsider that issue and rejects Briscoe's arguments to the contrary. *See infra* at 292–93 (discussing the Law of the Case Doctrine).

of its construction claims, (c) make a full accounting to Briscoe of Program proceeds deposited, (d) pay Briscoe its Entitlement under the Program and (e) indemnify and defend Briscoe against third-party claimants.

(2) Count Two—injunctive relief, awarding the relief requested in Count One, and further enjoining Travelers' wrongful acts, such as the interference with Briscoe's contract claims and the failure to provide Program funding.

(3) Count Three—tortious interference with prospective economic advantage, awarding compensatory damages, punitive damages and costs of suit.

(4) Count Four—accounting, ordering Travelers to make a full accounting to Briscoe because Travelers failed to make the accountings over the life of the Program as specified in the ADC.

(5) Count Five—breach of contract by improper application of receipts and failure to release Briscoe's money, ordering Travelers to make a full accounting and pay Briscoe its Entitlement along with the award of compensatory damages and costs of suit because Travelers (a) failed to repay non-program loans as funds became available, (b) did not properly earn interest on net proceeds and (c) failed to estimate and pay Briscoe its Entitlement.

(6) Count Six—breach of contract by failing to credit interest to Briscoe and improper charging of interest against Briscoe, awarding the relief requested in Count Five because Travelers failed to credit Briscoe with 15% interest on its estimated Entitlement and improperly allowed interest to accrue on the non-program loans instead of repaying them as proceeds became available.

(7) Count Seven—breach of contract by improper classification of expenses, awarding the relief requested in Counts Five and Six because Travelers improperly classified various expenses as non-program loans when they actually were Program advances.

(8) Count Eight—failure to deal in good faith, awarding the relief requested in Counts Five, Six and Seven because Travelers did not deal with Briscoe fairly, particularly with respect to funding the Program and interfering with the settlement of Briscoe's contract claims.

(9) Count Nine—breach of contract by failing to pursue construction litigation, awarding the relief requested in Counts Five, Six, Seven and Eight, and indemnification against third-party claimants because Travelers unilaterally cut funding of the pursuit of various Briscoe contract claims.

(10) Count Ten—exercise of domination and control over Briscoe, awarding the relief requested in Count Nine because Travelers' refusal to act in good faith reduced Briscoe's Entitlement and destroyed its chance for continuance as a viable entity upon Program completion.

Briscoe's Complaint essentially presents three legal causes of action: (1) breach of contract; (2) interference with prospective economic advantage; and (3) failure to act in good faith and fair dealing.[5] Although the Agency Opinion did not dismiss Briscoe's Complaint or any of the counts contained therein explicitly, it did draw into question the counts in Briscoe's Complaint, and the arguments relating thereto, that seek to alter or avoid the express language of the ADC.

In response to Briscoe's Complaint, Travelers raised various defenses including, but not limited to, the numerous re-

---

**5.** Briscoe's counts encompassed by the breach of contract cause of action include those that argue that Travelers refused to fund the Program, or refused to pay Briscoe its Entitlement, i.e., counts one, two, four, five, six, seven and nine. Count three expressly states a cause of action for tortious interference with prospective economic advantage. Counts eight and ten state causes of action for Travelers' alleged failure to act in good faith and fair dealing. In addition, counts one and nine seek indemnification and count four requests an accounting.

leases that Briscoe signed and Briscoe's repeated breaches of express ADC covenants. Travelers also asserted various counterclaims including, but not limited to, the request for damages for (1) Briscoe's filing of this lawsuit in bad faith, (2) Briscoe's diversion of the overfunding of its pension plan, (3) Briscoe's refusal to sign off on the Las Vegas settlement and (4) Briscoe's President's, Gabriel Calafati, refusal to act in good faith.

## ISSUES PRESENTED

Travelers classifies its four motions for summary judgment as follows: (1) Program Claims, (2) Calculation Claims, (3) Riveredge Claims and (4) Pension Plan Claims.

### Program Claims

Travelers seeks summary judgment as to all of Briscoe's Program Claims, *i.e.*, those claims regarding the funding and management of the Program. Briscoe contends that (1) Travelers should not have settled the Las Vegas Litigation, (2) Travelers intentionally underfunded Briscoe pursuant to the Program, (3) Briscoe was forced to take out non-program loans because of the underfunding and (4) Travelers wrongfully dominated and controlled Briscoe. Travelers seeks summary judgment based on the following: (1) Briscoe's failure to state a claim because of the language of the ADC; (2) Briscoe's execution of various releases which alleviate any liability to Travelers; and (3) Briscoe's express waiver in paragraph 6.3 of the ADC of the right to assert any Program Claims.

### Calculation Claims

Travelers seeks summary judgment as to Briscoe's Calculation Claims, *i.e.*, those claims by which Briscoe seeks to establish the formula for the calculation of its Entitlement. Those claims also concern Bris-

coe's arguments with respect to the estimation of its Entitlement and the advances it should have received pursuant thereto. Travelers asserts that no genuine issues of material fact exist based on (1) the language of the ADC, (2) the law of the case, (3) Briscoe's disregard for the formula set forth in the ADC and (4) the prematurity of Briscoe's claims. Therefore, Travelers argues that it is entitled to judgment as a matter of law.

### Riveredge Claims

Travelers seeks summary judgment on its counterclaim awarding it attorneys' fees and costs. Travelers claims that Briscoe has instituted this action in bad faith. In support of its motion, Travelers relies on *Riveredge Associates v. Metropolitan Life Insurance Co.*, 774 F.Supp. 897 (D.N.J. 1991).

### Pension Plan Claims

Travelers seeks summary judgment on its counterclaim awarding it those Program proceeds that Briscoe has wrongfully diverted and the return of all other funds that have been paid to Briscoe over the life of the Program. At a Court hearing on May 28, 1996, Judge Wolin found that (1) the Briscoe Pension Plan was overfunded, *i.e.*, the value of the assets of the Plan exceeded its liabilities, (2) the overfunding was being applied to benefit an entity named Briscoe Company, Inc. ("BCI"),[6] (3) the overfunding was collateral under the ADC belonging to Travelers and (4) Briscoe could not refuse to allow Travelers to inspect its documents concerning the Pension Plan. *See* 11/13/1997 Ct.Op.

Pursuant to that ruling, Travelers seeks summary judgment (1) declaring Briscoe in breach of the ADC, (2) awarding Travelers damages and (3) granting judgment as a matter of law to Travelers on Briscoe's Complaint.

---

6. BCI is an entity separate and apart from the Frank Briscoe Company, Inc. Gabriel Calafati, Briscoe President, created the company in 1985–86, "[i]n order to keep [the Briscoe] image out there" and thereby to preserve its viability. *See* Travelers' Mem.Supp. Pension Plan Mot. at 9.

### Briscoe's Motion

Briscoe seeks summary judgment as to all of Travelers' counterclaims and certain of Travelers' defenses. Briscoe asserts that it has not breached the ADC and as such cannot be denied its Entitlement. Briscoe further asserts that Travelers should not be awarded damages based on its failure to set forth a quantifiable measure of damages caused by any alleged breach.

## DISCUSSION

### Law of the Case Doctrine

The ongoing nature of this litigation and the number of previous rulings in this matter require the Court to set forth the law of the case governing the disposition of the motions presented.

■ The law of the case doctrine militates against courts re-deciding issues of law that were earlier resolved in the same case, either expressly or by necessary implication. *Public Interest Research Group of N.J., Inc. v. Magnesium Elektron, Inc.,* 123 F.3d 111, 116 (3d Cir.1997); *Schultz v. Onan Corp.,* 737 F.2d 339, 345 (3d Cir. 1984). "Although it does not limit the power of trial judges from reconsidering issues previously decided by a predecessor judge from the same court or from a court of coordinate jurisdiction, it does recognize that as a matter of comity a successor judge should not lightly overturn decisions of his predecessors in a given case." *Fagan v. City of Vineland,* 22 F.3d 1283, 1290 (3d Cir.1994) (citations omitted). The Third Circuit "has recognized several 'extraordinary circumstances' that warrant a court's reconsideration of an issue decided earlier in the course of litigation." *Public Interest Research Group,* 123 F.3d at 116–117. Those circumstances include when: "(1) new evidence is available; (2) a supervening new law has been announced; or (3) the earlier decision was clearly erroneous and would create manifest injustice." *Id.* at 117.

The law of the case doctrine is applicable in this instance. The Court has rendered several previous rulings in this matter. This Court finds no reason to review or reverse those earlier rulings. The parties have not met their burden of showing extraordinary circumstances which mandate reconsideration of any prior decision. The parties have not (1) proffered new evidence that did not exist when the previous rulings were made, (2) shown a change in the applicable law, or (3) shown that the earlier decisions were clearly erroneous or produced unjust results. As such, the Court sets forth the law of the case as follows: (1) the Agency Opinion and the express and implied findings contained therein; (2) the denial of reconsideration of the Agency Opinion; (3) the Order restraining Briscoe from further diversion of the overfunding of the Pension Plan; and (4) the Opinion denying reconsideration of the denial of the Pension Plan's motion to intervene.

Throughout this litigation, the Court has repeatedly held that the ADC is clear and unambiguous, and that it should govern the rights and obligations of the parties. As noted in the Agency Opinion, "[i]t is also well-established, as a matter of law, that the Court cannot rewrite the contract or alter it simply because its results turned out differently than the parties expected." *Briscoe,* 899 F.Supp. at 1308 (citations omitted). The numerous decisions of the Court have been in accordance with that conclusion. In deciding the motions at hand, this Court will continue to follow both the relevant law and the ADC.

### Standard for Summary Judgment

Fed.R.Civ.P. 56(c) provides for summary judgment when the moving party demonstrates that there is no genuine issue of material fact and the evidence establishes the moving party's entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Orson, Inc. v. Miramax Film Corp.,* 79 F.3d 1358, 1366 (3d Cir.1996). In making this determina-

tion, the Court must draw all reasonable inferences in favor of the non-movant. *Hullett v. Towers, Perrin, Forster & Crosby, Inc.,* 38 F.3d 107, 111 (3d Cir.1994); *National State Bank v. Federal Reserve Bank of New York,* 979 F.2d 1579, 1581 (3d Cir.1992).

Once the moving party has satisfied its initial burden, the party opposing the motion must establish that a genuine issue as to a material fact exists. *Jersey Cent. Power & Light Co. v. Lacey Township,* 772 F.2d 1103, 1109 (3d Cir.1985). The party opposing the motion for summary judgment cannot rest on mere allegations and instead must present actual evidence that creates a genuine issue as to a material fact for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 243, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Siegel Transfer, Inc. v. Carrier Express, Inc.,* 54 F.3d 1125, 1130–31 (3d Cir.1995). "[U]nsupported allegations in [a Plaintiff's] memorandum and pleadings are insufficient to repel summary judgment." *Schoch v. First Fidelity Bancorporation,* 912 F.2d 654, 657 (3d Cir.1990); *see also* Fed.R.Civ.P. 56(e) (requiring non-moving party to "set forth specific facts showing that there is a genuine issue for trial"). "There can be 'no genuine issue as to any material fact' where the nonmoving party's proof is deficient in meeting an essential part of the applicable legal standard, since such failure renders all other facts immaterial." *London v. Carson Pirie Scott & Co.,* 946 F.2d 1534, 1537–38 (Fed.Cir.1991) (quoting *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548). In determining whether there are any issues of material fact, the court must resolve all reasonable doubts as to the existence of a material fact against the moving party. *Smith v. Pittsburgh Gage & Supply Co.,* 464 F.2d 870, 874 (3d Cir.1972).

### Travelers' Motions for Summary Judgment

The Court must determine whether Briscoe's Complaint should survive Travelers' motions for summary judgment. In order to make this determination, the Court must first decide whether there are any genuine issues as to any material facts that would preclude summary judgment. Travelers must carry the burden of proving that there are no genuine issues as to a material fact, and that, despite drawing all reasonable inferences in Briscoe's favor, Travelers is entitled to judgment as a matter of law. Before considering the various claims, the Court notes several issues which do not present a genuine issue of material fact because those issues are the law of the case: (1) the ADC is clear and unambiguous; (2) the ADC created an agency relationship; (3) Briscoe is not entitled to interest or earnings on the Proceeds deposited with Travelers pursuant to the ADC; and (4) Briscoe's Pension Plan was overfunded and that overfunding was diverted to fund the pensions of BCI employees.

### Program Claims

Briscoe submits that genuine issues of material fact exist with respect to the following: (1) whether Travelers exercised its discretion under the ADC in good faith and in a commercially reasonable manner; (2) whether Travelers, as a secured creditor, failed to act in a commercially reasonable manner by not seeking the highest net benefit for Briscoe's collateral; (3) whether the ADC provided that Travelers could refuse to act in a commercially reasonable manner; and (4) whether Travelers committed actual fraud in the manner of its collection and disposition of the collateral. This Court grants Travelers' motion for summary judgment because no genuine issue of material fact exists with respect to Briscoe's Program Claims and Travelers prevails as a matter of law.

#### 1. Exercise of Discretion

Briscoe contends that Travelers exercised the discretion it possessed pursuant to the ADC in contradiction to the covenant of good faith and fair dealing implied in every contract in the State of New Jersey. Briscoe further contends that many of Travelers' actions directly contra-

dicted the express language of the parties' agreement. Briscoe claims that "under the ADC, [it] had a reasonable expectation of being able to receive Program advances and non-program loans, to keep its staff, to maintain its status in the construction industry, and to earn as large an [Entitlement] as its efforts could achieve." *See* Briscoe's Omnibus Mem. Opp'n Travelers' Mot. at 29. Briscoe claims that those purposes were frustrated by Travelers' interference with, or curtailment of, Briscoe's collection efforts through Travelers' (1) settlement of various claims for less than fair market value, (2) refusal to adequately fund Briscoe for the performance of the Program, and (3) tortious interference with Briscoe's attempts to maximize Program proceeds. Briscoe's arguments are without merit.

■ "[E]very contract in New Jersey contains an implied covenant of good faith and fair dealing." [7] *Sons of Thunder, Inc. v. Borden, Inc.,* 148 N.J. 396, 420, 690 A.2d 575 (1997); *Pickett v. Lloyd's,* 131 N.J. 457, 467, 621 A.2d 445 (1993). The implied covenant of good faith and fair dealing mandates that "neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Sons of Thunder,* 148 N.J. at 420, 690 A.2d 575 (internal quotations and citations omitted). The question is whether Travelers' "conduct destroyed [Briscoe's] reasonable expectations and right to receive the fruits of the contract." *Id.* at 425, 690 A.2d 575.

■ In *Sons of Thunder* the Court noted favorably that "[o]ther courts have stated that a party can violate the implied covenant of good faith and fair dealing without violating an express term of a contract." *Id.* at 422–23, 690 A.2d 575.

However, "the implied duty of good faith and fair dealing does not operate to alter the clear terms of an agreement and may not be invoked to preclude a party from exercising its express rights under such an agreement." *Fleming Companies, Inc. v. Thriftway Medford Lakes, Inc.,* 913 F.Supp. 837, 846 (D.N.J.1995) (citing *Glenfed Financial Corp., Commercial Finance Div. v. Penick Corp.,* 276 N.J.Super. 163, 647 A.2d 852 (App.Div.1994)).

The Court repeatedly has held that the ADC's language and requirements are clear and unambiguous. Although Briscoe's allegations sound in breach of the contract, including breach of the obligation of good faith and fair dealing implied in the ADC, the express language of the ADC directly contradicts any argument from Briscoe that Travelers violated the obligations of good faith and fair dealing. This Court finds that Travelers has only exercised the level of discretion afforded it under the express terms of the ADC.

■ The express language of the ADC makes clear that Travelers retains sole and absolute discretion over the manner, funding and performance of the disposition of Briscoe's collateral. It is true that the ADC gave Briscoe the ability to conduct the Program; however, it did so subject expressly to Travelers' review, approval and control. For example, Travelers specifically retained the "sole and absolute discretion" to settle any Collateral consisting of claims (ADC ¶ 3.2(c)), to terminate Briscoe's role in the Program (ADC ¶¶ 4.1, 14.1), or even to abandon the Collateral (ADC ¶ 23)—all in its "sole and absolute discretion." Additionally, Briscoe committed to cooperate with Travelers in furtherance of the Program (ADC ¶¶ 4.2, 24).[8]

---

7. Paragraph 26 of the ADC provides that "[t]his Agreement shall be construed in accordance with and governed by the laws of the State of New Jersey."

8. The key ADC provisions in this regard include (all emphases added):

3.1. As to the Collateral set forth on Schedule D–1, consisting generally of interests in real estate joint ventures and partnerships, *until otherwise notified by Travelers:*

\* \* \* \* \* \*

(b) [Briscoe] shall promptly proceed to dispose of the Collateral at public or private

As is evident from these provisions, Travelers is vested with absolute control over the performance of the Program. It has the right to determine whether Briscoe may act in Program matters at all and, if so, how Briscoe must proceed. Travelers even has the right to hire another agent to dispose of the Collateral, if it so wishes. *See* ADC ¶ 4.1.

The absolute discretion afforded Travelers is in line with the ADC's overall guiding principle that Briscoe's assets belong exclusively to Travelers, as found by the Court in the Agency Opinion. The overall nature of the ADC is fair in light of the occurrences leading to its consummation. The fact that the ADC was beneficial for both parties is set forth in the Agency Opinion. Pursuant to the ADC, Briscoe has received, among other things, a fee for its participation in the Program, Program advances, the ability to finish construction contracts with all funding coming from Travelers, the use of non-program loans interest free for eighteen months, and Travelers' forbearance of any deficiency owing it at the completion of the Program. Travelers, in turn, has had an agent to dispose of Program collateral and, thereby, has been able to recover a significant

proceedings. The sale or other disposition of the Collateral, which *shall be at the direction and under the control of Travelers,* may be as a unit or in parcels and at any time and place and on any terms but every aspect of the disposition including the method, manner, time, place and term shall be commercially reasonable.

(c) Upon receipt by [Briscoe] of a bona fide offer, [Briscoe] shall provide Travelers with a written description of the offer containing sufficient detail to enable Travelers to determine the reasonableness thereof, together with [Briscoe]'s recommendation. *Travelers shall notify [Briscoe] of its decision to accept or reject [Briscoe]'s recommendation.*

 ❖ * * ❖ * *

3.2. As to the Collateral set forth on Schedule D–2, consisting generally of construction contract claims, *until otherwise notified by Travelers:*

(a) [Briscoe] shall, *at the direction and under the control of Travelers,* proceed timely to collect same including, without limitation, the institution and maintenance of litigation.

(b) Upon receipt of any settlement offer, [Briscoe] shall provide Travelers with a written description of the offer containing sufficient detail to enable Travelers to determine the reasonableness thereof, together with [Briscoe]'s recommendation. *Travelers shall notify [Briscoe] of its decision to accept or reject [Briscoe]'s recommendation.*

(c) *Travelers shall have the right* at such time or times to make settlement proposals or to make any settlement on any claim as it *in its sole and absolute discretion* may determine.

 * * * * * *

4.1. Travelers retains the right, *exercisable in its sole and absolute discretion at such time or times as it shall determine,* to have the Collateral or any portion thereof collect-

ed and/or disposed of by a party or parties, including Travelers, other than [Briscoe].

4.2. In the event *Travelers shall determine to have the Collateral or any portion thereof collected and/or disposed of by a party or parties other than [Briscoe],* it shall so notify [Briscoe], identifying the Collateral and the party or parties, and *[Briscoe] shall forthwith turn over the Collateral to Travelers or if Travelers so directs,* to such party or parties, together with all information, records, documents, notes, files and the like concerning said Collateral which may be in [Briscoe]'s possession or under its control, and *[Briscoe] shall thereafter cooperate with Travelers* or such third party or parties in the collection and/or disposition of any or all such Collateral including, without limitation, providing consultation and participation in the prosecution of claims whether in arbitration, litigation or negotiation.

 * * * * * *

18.1. [Briscoe] hereby covenants, represents and warrants to Travelers:

 * * * * * *

(e) [Briscoe] shall devote its best efforts and substantially all of its time and attention to the completion of performance of [Briscoe]'s contracts and to the disposition of such Collateral *as Travelers may determine.*

 * * * * * *

23. *Abandonment of Collateral.* Travelers shall have the right *in its sole and absolute judgment* to determine not to collect and/or dispose of all or any portion or portions of the Collateral. Travelers shall notify [Briscoe] of any such determination, providing [Briscoe] with a description thereof and if such Collateral shall not then be in the possession of [Briscoe], Travelers shall turn over possession thereof to [Briscoe] and such Collateral shall no longer be subject to the terms of this Agreement.

amount of the debt Briscoe owed it. Travelers' retention of overall control of the Program was part of the bargained for exchange the parties agreed to in the ADC.

Briscoe has failed to show that Travelers improperly exercised its discretion under the ADC. Briscoe argues that Travelers' decrease in funding to the point of near elimination of all funding constituted a bad faith exercise of discretion. This argument is without merit. Not only did Travelers have total control over funding of the Program, but Travelers could hire another agent and discontinue Briscoe's services at any time. In fact, the parties have continued in the relationship for sixteen years, when the anticipated life of the contract was three years.

Briscoe has not demonstrated that Travelers took any actions which had "the effect of destroying or injuring [Briscoe's] right ... to receive the fruits of the contract." *Sons of Thunder,* 148 N.J. at 420, 690 A.2d 575. Briscoe fails to present a genuine issue as to a material fact with respect to Travelers' alleged improper exercise of its discretion, in light of the express language of the ADC. Accordingly, Travelers is entitled to judgment as a matter of law concerning Briscoe's claims of Travelers' exercise of discretion in violation of the covenant of good faith and fair dealing.

### 2. *Maximization of Profits*

Briscoe argues that Travelers' failure to seek the highest return on the Collateral violated the covenant of good faith and fair dealing and deprived Briscoe of its highest expected return under the ADC. Briscoe's arguments are without merit.

■ First, this Court finds that, based on the express language of the ADC, Briscoe could not have had a reasonable expectation of receiving a significant Entitlement at the conclusion of the ADC. Indeed it appears that the parties anticipated or at least contemplated a deficiency. Paragraph 6.3 of the ADC provides that:

> [Briscoe] acknowledges that upon the application of the net proceeds of the collection and/or disposition of the Collateral as provided in paragraph 12, *there will probably be a substantial deficiency due to Travelers,* and because Travelers, as provided in paragraph 12.4, has agreed to a plan providing for the cancellation of the deficiency, [Briscoe] should have no claim or cause of action against Travelers with regard to the manner of the collection and/or disposition of the Collateral, except for actual fraud on the part of Travelers. Accordingly, [Briscoe], in the event there shall be a deficiency, hereby waives any claim or cause of action which [Briscoe] may or shall have against Travelers for or by reason of the manner of the collection and/or disposition of the Collateral, except arising out of actual fraud on the part of Travelers. (emphasis added).

■ Second, Briscoe's argument is illogical. Briscoe submits that Travelers intentionally sought to minimize its own return under the ADC in order to reduce or destroy Briscoe's Entitlement. In that respect, Briscoe argues that Travelers tortiously interfered with its own contract. In New Jersey, a claim for tortious interference with economic advantage cannot be pursued by a party to the contract against another party to the contract. *See Silvestre v. Bell Atlantic Corp.,* 973 F.Supp. 475, 486 (D.N.J.1997), *aff'd,* 156 F.3d 1225 (3d Cir.1998) (holding tortious interference with contract claim can only be pursued against third-party not a party to the contract); *Coast Cities Truck Sales, Inc. v. Navistar Int'l Trans. Co.,* 912 F.Supp. 747, 772 (D.N.J.1995) (stating action for tortious interference with prospective contractual relation cannot be sustained between parties to the contract).

Third, Travelers did not have an obligation under the ADC to seek to maximize profits. In fact, the express language of the ADC provided that Travelers could

abandon Collateral if it so desired. *See* ADC ¶ 23.[9]

█ Finally, Briscoe's proffer of examples of Travelers' failure to maximize profits do not create a genuine issue as to a material fact regarding whether Travelers breached the covenant of good faith and fair dealing by failing to maximize profits. Briscoe states that "[a]t trial, [it] will focus on these acts or omissions by Travelers which not only involved failure to pursue the highest net benefit for Briscoe but sabotaged Briscoe's ability to do so and deprived Briscoe of the fruits of the ADC." *See* Briscoe's Omnibus Mem. Opp'n Travelers' Mot. at 17. Those acts or omissions include the following: (1) Travelers unreasonably forcing Briscoe to settle the claim in the Las Vegas litigation for $9,543,000, when Briscoe possibly could have obtained $291 million; and (2) Travelers' decision to reduce the funding under the Program thus requiring Briscoe to accept a $12 million recovery in the Pittsburgh litigation which was significantly lower than the possible recovery.

Briscoe cannot dispute that the recovery figures it advances are speculative. The Las Vegas claim arose from a Wastewater Treatment Plant construction project that Briscoe performed in Nevada. *See* 776 F.2d 1414, 1415 (9th Cir.1985). Briscoe asserted various claims against several defendants, including various county agencies in Clark County, Nevada. *Id.* Briscoe sought $70 million in compensatory damages and $70 million in punitive damages. The United States District Court for the District of Nevada dismissed numerous counts and three defendants in Briscoe's complaint. *Id.* Briscoe sought reconsideration of the dismissal and certification of certain questions of law to the Supreme Court of Nevada. Briscoe argued that, although the Nevada law upon which the district court had relied in dismissing the claims had not changed, the issues presented "were close questions in Nevada." The district court denied both Briscoe's

motion for reconsideration and Briscoe's motion to certify certain questions of law to the Supreme Court of Nevada. Thereafter, Travelers decided that Briscoe's claims having been prosecuted for over nine years, at enormous expense, and having twice been dismissed, needed to be settled. *See* Briscoe's App. Opp'n, Volume I, Ex. 15; Aff. Paul D. Tubach Opp'n, Ex. B & Ex. C.

In this action, Briscoe submits a letter memorandum from the former Chief Justice of the Supreme Court of Nevada, Thomas L. Steffen. *See* Decl. Matthew E. Moloshok, Ex. S. The former Chief Justice concludes that had the Supreme Court of Nevada considered Briscoe's arguments in the Las Vegas litigation, Briscoe's claims against the dismissed defendants would have been reinstated.

The proffer of Justice Steffen's opinion is pure speculation and is not at all persuasive in this context. Although Justice Steffen attests that he can predict how he and his former brethren would have ruled, it is pure speculation to so opine. Also, given the District Court's Opinion, it is likely that the Ninth Circuit Court of Appeals would have had to rule on the substantive claim and the motion denying certification to the Supreme Court of Nevada. Such a lengthy appeals pursuit would have cost Travelers significant legal fees and the chances of success were dubious and unknown.

Briscoe's arguments regarding the Pittsburgh litigation are similarly speculative. The Pittsburgh litigation arose out of the construction of the Pittsburgh Convention Center. Briscoe filed claims against several defendants in an action commenced in 1982. The record is unclear as to the total recovery Briscoe sought against the named defendants; however, correspondence from Travelers to Briscoe reveals that in 1993, claims against four of the defendants remained, and Travelers was tiring of the delay and expenses associated with the

---

9. The record does not disclose any evidence that Travelers has abandoned any Collateral.

Pittsburgh litigation.[10] *See* Aff. Paul D. Tubach, Ex. J & Ex. K. In fact, that correspondence reveals that for over one and a half years three of the four defendants were willing to settle the case. Therefore, over objection from Briscoe, Travelers decided to settle the action. Briscoe does not submit how much it possibly could have recovered in the Pittsburgh litigation, nor does Briscoe submit an estimate as to how much anticipated legal fees would have decreased the recovery. Thus, based on the facts presented, this Court cannot conclude that Travelers' decision to settle the Pittsburgh litigation for $12 million constituted a failure to maximize profits under the ADC.

Briscoe asserts, without adequate support, that the recoveries in Las Vegas and Pittsburgh would have been much more substantial. Such unsupported speculation does not create a genuine issue of fact. Moreover, the express language of the ADC gives Travelers the final decision with respect to the settlement or pursuit of claims in any case, ADC ¶ 3.2.

### 3. *Commercial Reasonableness*

Briscoe cites several New Jersey state cases in support of its arguments that Travelers did not act in a commercially reasonable manner with respect to the Las Vegas and Pittsburgh settlements. Specifically, Briscoe relies on *Security Sav. Bank v. Tranchitella*, 249 N.J.Super. 234, 592 A.2d 284 (App.Div.1991) and *Caterpillar Fin. Servs. Corp. v. Wells*, 278 N.J.Super. 481, 651 A.2d 507 (Law Div.1994). Briscoe's reliance is misplaced. Those cases which Briscoe cites note that commercial reasonableness does not require that a party obtain the highest price for the disposition of collateral.

In *Tranchitella*, the third-party defendant appealed from a lower court judgment finding it liable for a deficiency resulting from the sale of a repossessed tow truck. *See* 249 N.J.Super. at 236, 592 A.2d 284. The third-party defendant argued that the underlying sale of the tow truck was not conducted in a reasonable manner. *See id.* The court noted that "commercial reasonableness should be viewed as a flexible concept, based upon a consideration of all relevant factors presented in each individual case." *See id.* at 239, 592 A.2d 284. "Emphasis must be placed on the totality of the circumstances, viewing such factors as manner, method, time, place and terms as necessary and interrelated parts of the entire transaction." *See id.* at 240, 592 A.2d 284 (citations omitted).

The court first determined that the plaintiff had given inadequate notice of the sale. *See id.* at 243, 592 A.2d 284. Next, the court determined that the plaintiff had failed to seek the highest possible price for the truck. *See id.* The court, however, noted that "[a]lthough mere inadequacy of price is insufficient in itself to establish that the resale was not commercially reasonable ... [plaintiff] nonetheless had the obligation to make a good faith effort to obtain the highest possible price for the tow truck." *Id.* (citations omitted). The court found that the plaintiff had not determined the sales price for the truck in conformity with trade practice. *See id.* at 243–44, 592 A.2d 284. Based on the above sale deficiencies, the court found that the plaintiff "failed to dispose of the collateral in a commercially reasonable manner." *Id.* at 244, 592 A.2d 284.

Likewise, in *Wells*, the court relied on *Tranchitella* for the proposition that commercial reasonableness requires a review of the totality of the circumstances. *Wells*, 278 N.J.Super. at 505–06, 651 A.2d 507. In *Wells*, the plaintiff instituted a deficiency action against four guarantors of a lease of two heavy pieces of construction equipment. *See id.* at 485, 651 A.2d 507. There, the plaintiff failed to give the guarantors notice of the private sale of the equipment after repossession. *See id.* at

---

**10.** For example, Travelers complained that from June 1992 to June 1993 Travelers extended Briscoe $1,218,000 for the preparation of the cases.

504, 651 A.2d 507. The court also found that the market that the plaintiff offered the repossessed equipment for sale in was unusual under the circumstances and was not commercially reasonable.[11] *See id.* at 509, 651 A.2d 507. Furthermore, the court found that the price received by the purchaser of the repossessed equipment upon resale was so excessive as to indicate "that they were not disposed of in a commercially reasonable manner."[12] *Id.* at 509–510, 651 A.2d 507. The plaintiffs had also failed to obtain an independent appraisal of the equipment prior to sale. *See id.* at 510, 651 A.2d 507. Based on those factors, the court found that the plaintiff's disposition of the collateral was not commercially reasonable. *See id.* at 512, 651 A.2d 507.

■ A review of the totality of the circumstances in this case does not reveal that Travelers failed to dispose of the Collateral in a commercially reasonable manner. Briscoe provides no proof of unreasonableness as is required in the cases cited. Briscoe merely makes the unsupported allegation that Travelers failed to obtain the highest possible recovery for the settlement of the Las Vegas and Pittsburgh litigations. The speculative nature of the alleged possible recovery in conjunction with the anticipated legal fees for pursuit of the various claims leads this Court to conclude that Travelers, in the exercise of its absolute discretion, reasonably decided that settlement was the most advantageous disposition of that collateral. Briscoe does not create a genuine issue of fact by making the unsupported argument that it could have recovered more. Every settlement holds the possibility of a great-

er or lesser recovery through litigation. Settlements, however, provide security against the possibility of recovering nothing through litigation, as well as incurring substantial additional legal fees. Briscoe fails to create a triable issue regarding whether Travelers failed to act in a commercially reasonable manner in the disposition of the Collateral.

Additionally, Briscoe urges this Court to examine the disposition of each piece of Collateral to determine whether Travelers acted in a commercially reasonable manner. The Court refuses to entertain Briscoe's request. Briscoe fails to present evidence which creates a genuine issue of material fact with respect to the manner in which Travelers allegedly failed to act in a commercially reasonable manner. There is no evidence that the disposition of any of the Collateral satisfies the threshold for finding that Travelers did not act in a commercially reasonable manner. Briscoe's arguments that Travelers abused its discretion are unsupported by the record and directly contradict the express language of the ADC.

### 4. *Actual Fraud*

Although this Court has denied Briscoe's Program Claims on the merits, it appears that Briscoe expressly waived the right to assert such claims if there remains a deficiency owing to Travelers upon the completion of the Program. The ADC provides that, should there be a deficiency upon the completion of the Program, Briscoe waives all claims against Travelers concerning the disposition of the collateral,

---

11. "Although [the plaintiff] had financed the equipment to the debtors at retail, upon repossession, it disposed of the collateral via a limited wholesale market, its own retail dealer network. While in some situations a wholesale disposition may be commercially reasonable, depending on the available markets ... where collateral is financed at the retail level, a resale at retail may be a prerequisite to a finding of a fair and reasonable disposition." *Wells,* 278 N.J.Super. at 509, 651 A.2d 507 (citations omitted).

12. The *Wells* court noted that "[a]lthough mere inadequacy of price is insufficient itself to establish that the sale is not commercially reasonable, *Tranchitella, supra,* 249 N.J.Super. at 243, 592 A.2d 284, evidence that the price received for the goods sold was substantially less than their value and substantially less than that which the purchaser had resold them indicates that they were not disposed of in a commercially reasonable manner." *Id.* at 510, 651 A.2d 507 (citations omitted).

except those claims arising from actual fraud by Travelers. ADC ¶ 6.3 (for full text *see supra* at 20). Travelers argues that because there will be a deficiency at the completion of the Program, Briscoe has agreed to waive all claims except those based on actual fraud committed by Travelers.[13] Travelers concludes that Briscoe's Program Claims should be dismissed because Briscoe has failed to allege or show that Travelers committed actual fraud. Briscoe contends that, if necessary, it can establish that Travelers committed actual fraud as specified in paragraph 6.3. Briscoe's contention is without merit.

First, the Court notes that Briscoe has failed to plead actual fraud in its Complaint. The Federal Rules of Civil Procedure require that fraud must be pleaded with particularity. Fed.R.Civ.P. 9(b).[14] Briscoe has failed to plead with particularity that Travelers committed actual fraud and the circumstances substantiating such a claim. "[C]onclusory references to fraud in [Briscoe's memorandum of law] do not comport with the particularity requirement of Fed.R.Civ.P. 9(b)." *Cheminor Drugs, Ltd. v. Ethyl Corp.*, 993 F.Supp. 271, 281 (D.N.J.1998), *aff'd*, 168 F.3d 119 (3d Cir. 1999).

In addition to Briscoe's failure to plead fraud with particularity, Travelers is entitled to judgment as a matter of law on the merits of Briscoe's fraud claim. Briscoe contends that its alleged showing of Travelers' actions constituting bad faith and failure to act in a commercially reasonable manner constitutes actual fraud. Briscoe, without support, urges this Court, pursuant to the language of the ADC, to adopt a standard equating bad faith and failure to act in a commercially reasonable manner with actual fraud. This Court declines to reach the conclusion Briscoe asserts.

"The elements for actionable fraud under New Jersey law are proof that the defendant made (1) a material misrepresentation of present or past fact (2) with knowledge of its falsity (3) with the intention that the other party rely thereon (4) and which resulted in reasonable reliance by plaintiff."[15] *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1182 (3d Cir. 1993) (citations omitted); *Ideal Dairy Farms, Inc. v. John Labatt, Ltd.*, 90 F.3d 737, 746 (3d Cir.1996); *Fleming Companies, Inc. v. Thriftway Medford Lakes, Inc.*, 913 F.Supp. 837, 844 (D.N.J.1995) (citations omitted). Briscoe has failed to allege or show that Travelers made a material misrepresentation, with knowledge of its falsity, with the intention that Briscoe rely thereon, upon which Briscoe reasonably relied. Briscoe has not posited any evidence that even remotely satisfies any one of the four elements of the test for actual fraud.

The test Briscoe propounds does not satisfy the well-established standard for actual fraud in New Jersey. Briscoe submits that Travelers' alleged refusal to fund the Program and unreasonable settlements are evidence of actual fraud. Those prof-

13. Briscoe concedes that, because of Travelers' allegedly tortious performance of the Program, there will probably be a deficiency upon the completion of the Program. Briscoe, however, argues that had Travelers pursued the Program in good faith and sought the highest net benefit for Briscoe, as required by New Jersey law, Travelers would have been paid in full and no deficiency would exist. This Court need not consider on these motions for summary judgment whether there will be a deficiency upon the completion of the Program.

14. Federal Rules of Civil Procedure 9(b) provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."

15. "Actual fraud consists in deceit, artifice, trick, design, some direct and active operation of the mind; it includes cases of the intentional and successful employment of any cunning, deception, or artifice used to circumvent or cheat another." BLACK'S LAW DICTIONARY 661 (6th ed.1990). Under New Jersey law, fraud in the legal sense differs from fraud in the equitable sense in that the former type requires proof of scienter. *See Lightning Lube*, 4 F.3d at 1182–83; *Esoldi v. Esoldi*, 930 F.Supp. 1015, 1021 (D.N.J.1996).

fers are clearly insufficient to establish a cause of action for actual fraud.

Briscoe, acknowledging that the case is not direct precedent for its proposed actual fraud standard, cites *National Westminster Bank N.J. v. Lomker*, 277 N.J.Super. 491, 649 A.2d 1328 (App.Div.1994), *certif. denied,* 142 N.J. 454, 663 A.2d 1361 (1995), in support of its actual fraud argument. In *Lomker,* the plaintiff, creditor bank, sued the defendants, guarantors of a real estate loan, for payment on their personal guaranties because of the debtor's default. *See id.* at 493–94, 649 A.2d 1328. The personal guaranties that the defendants signed included a waiver of certain claims against the plaintiff bank. *See id.* at 497–98, 649 A.2d 1328. The defendants, despite the waiver clause, argued that the debtor would not have defaulted on the loan if the plaintiff bank had not engaged in bad faith, fraud and conspiracy with respect to the real estate collateral. *See id.* at 494, 649 A.2d 1328. The defendants brought evidence before the court showing that the debtor was contracting to sell the real estate for an amount that would have extinguished the loan, but the plaintiff bank leaked information to the buyer of the property that the bank would be foreclosing on the property relatively soon. *See id.* at 494–95, 649 A.2d 1328. The evidence further revealed that the plaintiff bank's leak of that information encouraged the buyer to forego the purchase from the debtor, and instead, the buyer later purchased the property from the bank for half the original sales price and for a price below the amount owing on the loan. *See id.*

The court first observed that the obligation of good faith and fair dealing implied in every contract did not "impose upon a lender obligations that alter the terms of its deal or preclude it from exercising its bargained-for rights." *Id.* at 496, 649 A.2d 1328 (citations omitted). The court observed that "a debtor may defend against enforcement of lender's rights where the lender has engaged in bad faith, misconduct or the like." *Id.* Finding that the plaintiff bank had conspired and engaged in "inside" dealing with the buyer, the court found that the defendants had raised a triable issue of fact that could possibly defeat the plaintiff's claims. *See id.* at 499–500, 649 A.2d 1328. With respect to the waiver provisions in the guaranties, the court concluded that because the waiver language did not expressly waive the types of arguments presented by the defendants, they were permitted to present those issues. *See id.* at 497–99, 649 A.2d 1328.

The reasoning of *Lomker* is inapposite and Briscoe cannot prevail on that basis. The *Lomker* court did not conclude that the plaintiff bank had engaged in actual fraud. The court merely permitted the defendants to proceed with their defenses of bad faith and other misconduct. Briscoe does not allege that Travelers engaged in collusion or a conspiracy to reduce the proceeds from the disposition of the collateral. Briscoe alleges that Travelers abused its discretion in disposing of certain collateral. The key issue in *Lomker* was that by dealing with the buyer, the bank could make a greater amount because it could sell the property to the buyer after foreclosure and still recover from the defendants on their personal guaranties. However, in this instance, there was no economic advantage to Travelers by disposing of the Collateral for lower than its value. Briscoe's allegations do not support its reliance on *Lomker.* Travelers is entitled to judgement as a matter of law on Briscoe's Program Claims. Briscoe cannot prove actual fraud, and therefore, pursuant to the waiver in paragraph 6.3 of the ADC, it has expressly waived all other claims regarding the disposition of the Collateral.

### 5. *Enforceability of the Waiver*

Briscoe seeks in its own motion for summary judgment to declare paragraph 6.3 unenforceable as against public policy.

This Court will consider whether paragraph 6.3 is enforceable *infra.*

### 6. *Conclusions on Program Claims*

This Court grants Travelers' motion for summary judgment as to Briscoe's Program Claims. There are no genuine issues as to any material facts with respect to those claims and Travelers prevails on those claims as a matter of law. This Court grants judgment as a matter of law to Travelers on Counts One, Two, Three, Five, Six, Seven, Eight, Nine and Ten of Briscoe's Complaint in their entirety.

### *Calculation Claims*

Briscoe submits that the following present genuine issues of material fact that the jury should consider: (1) whether the Program is substantially complete; (2) whether Travelers must pay Briscoe the Entitlement that it has earned; (3) whether Travelers improperly failed to pay down non-program loans as proceeds became available; and (4) whether Travelers failed to make required advances throughout the life of the ADC and now owes Briscoe interest on those failed payments. Briscoe's Calculation Claims are dependent on whether or not Travelers is required to pay Briscoe its Entitlement now.

### 1. *Substantial Completion*

The ADC vests complete discretion with Travelers to decide whether to pay Briscoe's Entitlement when the Program is substantially complete or fully complete. Paragraph 9.1 of the ADC provides that:

Upon collection and/or disposition of all of the Collateral (or such earlier date as Travelers *shall have determined in its sole and absolute discretion* that substantially all of the Collateral shall have been collected and disposed of or to abandon any further collection and/or

disposition of the Collateral in which events the balance of the Collateral shall be deemed to have been abandoned by Travelers and shall become subject to the provisions of Paragraph 23), and provided [Briscoe] shall not be in default as hereinafter provided in Paragraph 13 and shall have completed the performance of the contracts as provided in paragraph 7, [Briscoe] shall then become entitled to and shall receive an amount equal to fifty (50%) percent of the net proceeds realized by Travelers from the collection and/or disposition of the Collateral as defined in paragraph 9.3 hereof (hereinafter "Net Proceeds Percentage Amount"). (emphasis added).

The ADC is clear that Travelers need not pay Briscoe's Entitlement until the Program is complete or until such time as Travelers determines that Briscoe is due its Entitlement because the Program has been substantially completed. Briscoe argues that Travelers should pay its Entitlement now because the Program is substantially complete. In support of that argument, Briscoe submits that there "are substantially less than $2 million in the aggregate" remaining of the Collateral. *See* Briscoe's Omnibus Mem. Opp'n Travelers' Mot. at 24.

At oral argument, the parties agreed that the remaining Collateral consists of the following: (1) Briscoe's interest in two parcels of real estate; [16] (2) the *Courter* litigation; [17] and (3) approximately $2.5 million in overfunding of Briscoe's pension plan. *See* Tr. Oral Argument 10/29/98, at 3–9. Whether the Program is substantially complete is not relevant to the Court's considerations here. Briscoe cannot demand the payment of its Entitlement (to the extent any exists) until final completion of the Program. According to the express language of the ADC, Travelers is vested

---

**16.** Briscoe has an ownership interest in certain real estate limited partnerships or joint ventures. *See* Briscoe App. Opp'n, Vol. III, Ex. 39.

**17.** *Courter* involves a lawsuit filed by a consultant on a construction project against Briscoe. The litigation has resulted in a $1.2 million judgment against Briscoe, which Briscoe is appealing.

with the "sole and absolute discretion" to decide whether to pay Briscoe's Entitlement upon the substantial completion of the Program.

Several of Briscoe's other Calculation Claims also relate to payments that Travelers can choose to defer until final completion of the Program, including Briscoe's advances against its Entitlement.[18] Briscoe's remaining Calculation Claims relate to the components of the ADC prescribed formula for calculating its Entitlement. As such, Briscoe's Calculation Claims are premature because, pursuant to the express language in the ADC, the payments that Briscoe demands, which require an ultimate resolution of all Collateral, are not due until final completion of the Program.

■ Briscoe argues that Travelers is unduly prolonging the Program in order to deny Briscoe its Entitlement. Briscoe's attempt to blame Travelers for the unexpected duration of the Program is unpersuasive. Both Briscoe and Travelers concede that the Program has continued longer than anyone expected. However, this Court concludes from the submissions of the parties that at various times, other than the vagaries of litigation, both sides may have contributed to the delay.[19] In addition, the Court notes that both Briscoe and Travelers have derived substantial benefits during the life of the Program. Briscoe has received funding and the use of non-program loans over the life of the Program. Briscoe cannot argue that it has been, or is currently being, taken advantage of when both parties have benefitted from the overall success of the Program.

Briscoe also argues that Travelers is not acting in good faith in refusing to declare the Program substantially complete and pay Briscoe its Entitlement. This argument is without merit. As discussed above, the implied covenant of good faith and fair dealing requires that "neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Sons of Thunder*, 148 N.J. at 420, 690 A.2d 575. Briscoe has failed to introduce any evidence that Travelers is seeking to destroy Briscoe's rights to receive the fruits of the contract by not declaring the Program substantially complete.

In light of Briscoe's failure to produce evidence that Travelers is intentionally delaying the completion of the Program in order to withhold or to destroy Briscoe's Entitlement, the Court finds under the totality of the circumstances that Travelers has a reasonable basis to refuse to declare the Program substantially complete. Paragraph 9.1 of the ADC, under which Travelers has the sole right to declare the Program substantially complete, provides that upon such declaration "the balance of the Collateral shall be deemed to have been abandoned by Travelers and shall become subject to the provisions of Paragraph 23." ADC ¶ 9.1. Paragraph 23 of the ADC provides that after abandonment of certain Collateral, "Travelers shall turn over possession thereof to [Briscoe] and such Collateral shall no longer be subject to the terms of this Agreement." ADC ¶ 23. Thus, if Travelers were to declare the Program substantially complete, Travelers could be adversely affecting its own rights under the Program.

Furthermore, the record does not show that Travelers is attempting to decrease Briscoe's Entitlement by withholding the calculation of Briscoe's Entitlement until final completion of the Program. Although there are only three pieces of collateral remaining, the unpredictable value of that collateral makes it commercially reasonable for Travelers to defer the calculation of Briscoe's Entitlement until final completion of the Program. At oral argu-

---

18. ADC ¶ 9.4.

19. This Court finds that there is no fault to be ascribed to either party regarding these delays.

ment, the parties agreed that (1) the value of the two remaining parcels of real estate were approximately four or five million dollars, (2) the value of the pension plan overfunding was in excess of two million dollars, and (3) the value of the *Courter* litigation was unknown because there were unresolved claims pending. *See* Tr. Oral Argument 10/29/98, at 7, 4, 5–6. The total value of the remaining collateral is unknown because of the unpredictability of the *Courter* litigation. Therefore, it is entirely reasonable for Travelers to withhold Briscoe's Entitlement, *if one is due*, until a final calculation can be made in accordance with the ADC prescribed formula.

### 2. *Conclusion on Calculation Claims*

Travelers is entitled to judgment as a matter of law on Briscoe's demand that Travelers pay Briscoe its Entitlement now. Travelers has the absolute discretion to decide whether to pay Briscoe's Entitlement upon substantial completion of the Program. Briscoe has failed to raise a genuine issue of material fact regarding Travelers' exercise of its discretion.

 Briscoe's remaining Calculation Claims relate to the components of the ADC prescribed formula for calculating Briscoe's Entitlement. Based on this Court's conclusion that Briscoe cannot demand its Entitlement at this time, this Court finds that those claims are premature. There can be no dispute regarding the calculation of Briscoe's Entitlement at this time because the time has not come for Travelers to make a final calculation.

Therefore, those allegations in Briscoe's Complaint do not present a genuine case or controversy. Travelers is entitled to judgment as a matter of law with respect to those claims as well.[20]

Travelers' motion seeking summary judgment regarding Counts One, Two, Four, Five, Six and Eight of Briscoe's Complaint is granted.

### *Riveredge Claims*

In this section, this Court will consider both Travelers' motion for summary judgment and Briscoe's cross-motion for summary judgment. Travelers seeks summary judgment barring Briscoe from asserting any claims under the ADC and awarding Travelers' costs and attorneys' fees for defending against this action which it contends Briscoe filed in bad faith. In support of its motion, Travelers relies on *Riveredge Assocs. v. Metropolitan Life Ins. Co.*, 774 F.Supp. 897 (D.N.J.1991). Briscoe seeks summary judgment arguing that it did not institute this action in bad faith or in contradiction to its own understanding of the ADC.

In *Riveredge*, the plaintiff borrowed money, secured by a mortgage, from the defendant to purchase real estate. *Id.* at 898. The parties thereafter formed a partnership and transferred the real estate to that partnership, subject to the mortgage on the property. *Id.* When the defendant refused to allow the partnership to prepay the loan, the plaintiff instituted an action claiming that the defendant was violating the terms of the contract. *Id.* The Court analyzed the express language of the mort-

20. Federal courts can only resolve actual cases or controversies. *See* U.S. Cont. art. III, § 2. "Ripeness prevents courts from 'entangling themselves in abstract disagreements.'" *Presbytery of New Jersey v. Florio*, 40 F.3d 1454, 1462 (3d Cir.1994) (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 148, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967)). "A federal court's jurisdiction therefore can be invoked only when the plaintiff himself has suffered some threatened or actual injury resulting from the putatively illegal action." *Id.* at 1463 (internal quotations and citations omitted). In this instance, Briscoe has not been harmed by any decision of Travelers regarding the calculation of Briscoe's Entitlement. There will be no real or substantial dispute until the end of the Program, or such earlier time as Travelers determines, when it is required to calculate Briscoe's Entitlement. This Court's conclusion is not a decision with respect to the merits of the counts in Briscoe's Complaint concerning the calculation of its Entitlement. This Court simply concludes that those counts are not ripe in that they do not present a real case or controversy based on this Court's conclusion regarding whether Briscoe is due its Entitlement now.

gage note and concluded that it did not make provision for the prepayment of the loan. *Riveredge Assocs. v. Metropolitan Life Ins. Co.*, 774 F.Supp. 892, 893–894 (D.N.J.1991).[21] Contrary to the plaintiff's arguments, the provisions of the note that the plaintiff relied on clearly applied to the defendant's right to accelerate the due date of the loan upon the partnership's default. *Id.* Thus, the court granted summary judgment in the defendant's favor, concluding that the defendant was under no obligation to allow the partnership to prepay the loan. *Id.* at 897.

The defendant also asserted a counterclaim against the plaintiff arguing that the plaintiff breached the covenant of good faith and fair dealing contained in their agreement by commencing the litigation based on a bad faith interpretation of the contract. *Riveredge*, 774 F.Supp. at 899. The defendant sought damages in the amount of its legal fees and the costs of defending against the lawsuit. *Id.*

"In support of its counterclaim, [the defendant] relie[d] primarily on the comments to § 205 of the Restatement (Second) of Contracts, and *Association Group Life, Inc. v. Catholic War Veterans of the United States of America*, 61 N.J. 150, 293 A.2d 382 (1972)." *Id.* at 899. Comment e to § 205 of the Restatement provides that the covenant of good faith and fair dealing implied in every contract extends to the "assertion, settlement and litigation of contract claims and defenses." "According to comment e, the covenant is breached by 'conduct such as conjuring up a pretended dispute, [or] asserting an interpretation [of the contract] contrary to one's own understanding.'" *Id.* at 900 (quoting Restatement (Second) of Contracts comment e). In *Catholic War Veterans*, the New Jersey Supreme Court held, consistent with Restatement comment e, that "a cause of action could be maintained if a jury could rationally find that a party to the contract

engaged in behavior 'not contemplated by the spirit of the contract and [that] fell short of fair dealing.'" 774 F.Supp. at 900 (quoting *Catholic War Veterans*, 61 N.J. at 154, 293 A.2d 382).

The Court found that the defendant could maintain a cause of action if the plaintiff had "instituted its action with knowledge that it was not entitled under the agreements to the relief it sought." *Id.* at 900. The Court considered the proper remedy where "the complaint was lodged despite [the plaintiff's] own contrary understanding of its obligations under the agreements." *Id.* at 901. The Court concluded that "[u]nder these circumstances ... attorneys' fees and other costs of defending against a wrongful action are the proper measure of damages." *Id.* at 902.

Travelers asserts that Briscoe's actions satisfy the requirements of bad faith litigation as set forth in *Riveredge*. Travelers asserts the following in support of its argument that Briscoe instituted this action in bad faith, that: (1) the Agency Opinion concluded that there was no truth to any of Briscoe's claims and that they were using creative math in an effort to obtain money; (2) the Agency Opinion concluded that Briscoe's witnesses were not credible; (3) the memorandum of William Kelly seeking ways to increase Briscoe's recovery evidences bad faith; and (4) Briscoe's continued refusal to comply with the Court's Orders also evidences bad faith. This Court refuses to reach the conclusion Travelers urges.

■ This case is distinguishable from *Riveredge* because, whereas the plaintiff's claim in *Riveredge* directly contradicted the language of the mortgage note, the ADC was silent with respect to several of Briscoe's claims. For example, the Court in the Agency Opinion noted that the ADC

---

**21.** There are companion *Riveredge* cases. They were issued on October 2, 1991, and January 15, 1991.

was silent with respect to Briscoe's request for interest on the gross proceeds. *See* 899 F.Supp. at 1309, 1312–13. Furthermore, the Court *Riveredge* did not *award* damages based on the defendant's claims, it merely held that the defendant could possibly maintain a cause of action.

Travelers has not demonstrated that Briscoe asserted its claims in direct contradiction of its own (i.e., Briscoe's) interpretation of the ADC. In contrast this Court is satisfied that Briscoe has demonstrated that it did not assert this action in bad faith. The facts of this case do not warrant the award of costs and attorneys' fees as in *Riveredge*. Although some of Briscoe's claims are without merit, Travelers does not set forth sufficiently persuasive facts to show that this lawsuit was commenced in bad faith. More important, *Riveredge* as a matter of law does not support a finding that Briscoe acted in bad faith here.

Travelers also contends that Briscoe, by reason of its misconduct, should be barred from pursuing all claims under the ADC. Travelers, however, presents no case law supporting such a proposition. Instead, Travelers apparently seeks to extend the *Riveredge* holding. As discussed above, Travelers has not demonstrated, and this Court does not find, that Briscoe commenced this lawsuit in bad faith. Thus, this Court does not find that Briscoe's claims are barred.[22]

Instead, this Court finds that as a matter of law this case is not one justifying the same conclusion as that reached in *Riveredge*. Therefore, this Court grants Briscoe summary judgment regarding Travelers' *Riveredge* claims.

22. The Court notes that Travelers' argument that Briscoe's claims should be barred for filing this lawsuit in bad faith is novel. The Court finds no court that has reached the conclusion urged by Travelers. However, because the Court finds that Travelers has not shown that Briscoe filed this lawsuit in bad

### Pension Plan Claims

■ Travelers seeks summary judgment barring Briscoe from asserting any claims under the ADC and awarding Travelers damages based on Briscoe's diversion of the overfunding of its pension plan. Although there are no genuine issues of material fact regarding the overfunding of the Pension Plan, this Court, as a matter of law, determines that Travelers is not entitled to the enforcement of such a penalty provision against Briscoe.

On May 28, 1996, the Court granted Travelers' motion to restrain any further diversion of the overfunding of Briscoe's pension plan and to provide access to all documents and information within Briscoe's possession, custody and control regarding the plan. This Court also has denied the Pension Plan's motion to intervene and has directed Briscoe to produce documents relating to the contributions to the pension plan. *See* Ct.Op. dated November 13, 1997. The Court already has determined that the pension plan was overfunded. The only remaining issue is the manner in which the overfunding should be repaid to Travelers.

Travelers now seeks to bar Briscoe from pursuing any claims under the ADC because Briscoe has breached the ADC with respect to the overfunding of its pension plan. Based on Travelers' continuation with the Program and Travelers' own breaches of the ADC, this Court refuses as a matter of law to enforce such a draconian penalty against Briscoe. *See* discussion of penalty provision *infra* at 308–09. In addition, this Court notes that Travelers has not shown that Briscoe's actions were not taken in good faith.[23]

faith, it need not decide whether Travelers' argument has any basis in the law.

23. Briscoe's evidence of a good faith basis for its actions with respect to the Pension Plan further dissuades this Court from enforcing a penalty provision against it.

For example, Briscoe's refusal to allow Travelers to inspect documents relating to its pension plan appears to have violated paragraph 19.2,[24] providing that Travelers has the right to inspect Briscoe's books and records. Briscoe initially did not comply with Travelers' request regarding the pension plan because Briscoe assumed that the pension plan was not collateral under the ADC. Furthermore, Briscoe has not repaid the overfunding of the pension plan to Travelers, in accordance with the Court's Order, because the parties have been unable to designate a feasible method of withdrawing the overfunding from the pension plan without it (the withdrawal) being penalized under federal regulations. Although Travelers argues that Briscoe's alleged breach has caused it damages, Travelers has failed to allege how or to what extent it has been damaged.

This Court determines that Travelers is not entitled to the enforcement of a penalty provision against Briscoe as a matter of law. Thus, Travelers' motion for summary judgment is denied.

24. Paragraph 19.2 provides that "[Briscoe] shall permit agents or representatives of Travelers to monitor its performance under this Agreement and, during reasonable business hours, to inspect its books and records."

25. Travelers has filed two "Third Amended Answer and Counterclaim[s]" in this matter. The first was filed on April 17, 1996, in response to Magistrate Judge Pisano's decision denying Travelers the right to amend its "Second Amended Answer and Counterclaim" to include claims asserted against Gabriel Calafati individually. Travelers appealed Judge Pisano's decision to Judge Wolin.

On May 28, 1996, Judge Wolin reversed Judge Pisano and granted Travelers' motion to amend the counterclaim to include claims against Calafati. Judge Wolin held that "in order not to prejudice the parties involved in the current litigation, the Court will sever Mr. Calafati from the current litigation and will stay the Calafati proceeding until conclusion of the current litigation. So granting Travelers's motion to amend and then severing and staying the Calafati part of this action will comport with the strong policy underlying Rule 15(a) by allowing Travelers fully and fairly to litigate its claims and will not preclude them by virtue of the entire-controversy

### Briscoe's Motion for Summary Judgment

#### Forfeiture of Claims

Briscoe seeks summary judgment as to those defenses that Travelers asserts which seek to bar Briscoe from asserting any claims under the ADC based on Briscoe's breach of the ADC. As set forth above, although this Court has not found that Briscoe should be barred from asserting its claims, this Court granted Travelers' summary judgment motions as to Briscoe's Program Claims because there are no genuine issues of material fact and Travelers is entitled to judgment as a matter of law. Also, this Court granted Travelers' motion for summary judgment as to Briscoe's Calculation Claims because Briscoe is contractually precluded from demanding the payment of its Entitlement until final completion of the Program. Thus, Travelers' defenses arguing that Briscoe is barred from asserting its claims are moot because this Court has granted Travelers summary judgment on those claims.

#### Travelers' Counterclaim[25]

With respect to the first two counts of its counterclaim, Travelers seeks

doctrine." Tr. Oral Argument 5/28/1996, at 10.

Thereafter, on June 6, 1996, Travelers filed a new "Third Amended Answer and Counterclaim" asserting three claims against Calafati individually. Those claims were numbered Counts Eleven, Thirteen and Fourteen. On July 1, 1996, Briscoe's attorney, Jonathan L. Goldstein, sent Travelers' attorney, Frederic S. Kessler, a letter stating that Calafati "reserves his right to answer, move or otherwise proceed as a party with respect to the allegations of the Amended Counterclaim at the appropriate time."

The parties now dispute which "Third Amended Answer and Counterclaim" is the operative filing. Travelers argues that the June 6, 1996, filing is operative. Briscoe asserts that the June 6, 1996, filing is not the operative filing because the Court never entered an appropriate order prior to Travelers filing the new answer and counterclaim. Briscoe further asserts that if Travelers' claims against Calafati are properly before the Court, they present a separate case. Briscoe's assertions are without merit.

Judge Wolin expressly intended that Travelers be permitted to assert claims against Cala-

return of all ADC Collateral because it declared Briscoe in breach of the ADC in May 1994 and November 1995. At this point in the litigation, the parties concede that there are only several pieces of Collateral remaining. Also, the parties are close to disposing of the remaining Collateral. Throughout the course of this litigation Travelers has sought to dispose of the remaining Collateral with Briscoe's involvement. Although Travelers declared Briscoe in breach of the ADC in May 1994, Travelers continued to perform under the ADC and also continued to seek Briscoe's performance under the ADC. Travelers did not pursue a claim concerning Briscoe's alleged breach until after Briscoe initiated this action.

Furthermore, the effect of enforcing the breach provision of the ADC would be to require Briscoe to forfeit all of its rights under the Program. Ordinarily, courts will enforce a forfeiture provision that parties contract "in the absence of fraud, accident, surprise, or improper practice." *Dunkin' Donuts of America, Inc. v. Middletown Donut Corp.*, 100 N.J. 166, 182, 495 A.2d 66 (1985) (citations omitted). However, the circumstances of this case call for the application of another well recognized equitable principle—"that a court should not grant relief to one who is a wrongdoer with respect to the subject matter in suit." *Id.* at 183, 495 A.2d 66.

Despite Briscoe's alleged breaches under the ADC, Travelers has permitted the relationship with Briscoe to continue. Although Travelers asserts that this Court should enforce the forfeiture remedy due to Briscoe's alleged breach of contract, Travelers has also breached the ADC by failing to timely provide to Briscoe the estimates of its Entitlement required by the ADC. Thus, under the circumstances, this Court shall not enforce the forfeiture provision against Briscoe at such a late stage in the Program because Travelers is also a wrongdoer, i.e. Travelers has not fully complied with the requirements under the ADC. This Court grants Briscoe's motion seeking summary judgment as to Travelers' counterclaim—Counts One and Two—as a matter of law.

In the third count of its counterclaim, Travelers seeks recovery for Briscoe's alleged delay and frustration of the consummation of an agreement to dispose of certain real estate Collateral. This Court denies Briscoe's motion for summary judgment as to the third count of Travelers' counterclaim. Travelers has submitted evidence to this Court creating a genuine issue of material fact regarding whether

fati individually. More important, Briscoe should have filed a motion to strike the pleading, pursuant to Fed.R.Civ.P. 12(f), if it had determined that the pleading was improper. Briscoe had twenty days to so move, but failed to make such a motion. *See* Fed.R.Civ.P. 12(f). As such, this Court denies Briscoe's attempt to now challenge the validity of Travelers' June 6, 1996, "Third Amended Answer and Counterclaim."

Furthermore, this Court concludes that the claims against Calafati individually do not constitute a separate case. Judge Wolin based his decision to permit the amendment on the Entire Controversy Doctrine. The Court concluded that Travelers should not be required to bring those claims in a separate action because the Entire Controversy Doctrine might preclude any such separate action. The Court obviously sought to avoid the commencement of separate cases. Thus,

Briscoe's argument that this Court would permit the amendment and then sever the case into two separate actions is illogical. Pursuant to Fed.R.Civ.P. 42(b), the Court may order separate trials of any claims "in furtherance of convenience or to avoid prejudice". This is expressly what Judge Wolin did in this instance. As to whether or not a judgment on the claims against Briscoe would constitute a final judgment prior to the resolution of the claims against Calafati, this Court need not decide that issue for purposes of the instant motions for summary judgment.

For the reasons discussed, this Court concludes that the June 6, 1996, filing including claims against Calafati individually is a proper filing and those issues shall be resolved in this same action. As such, this Court uses the June 6, 1996, filing as the operative filing in addressing the Counts asserted against Briscoe in Travelers' counterclaim.

Briscoe frustrated or delayed the disposition of the subject real estate.[26]

The fourth count of Travelers' counterclaim is its *Riveredge* claim. This Court granted Briscoe summary judgment on this counterclaim. *See supra* at 305–07.

In the fifth count of its counterclaim, Travelers seeks to compel Briscoe's full cooperation with the terms of the ADC. In support of this count, Travelers argues that it does not have an adequate remedy at law for Briscoe's alleged breaches. Thus, it requests injunctive relief. The Court finds the relief sought in this count moot in light of the Court's holding in the Agency Opinion that the parties' relationship would be governed by the terms of the ADC. Travelers has not offered a specific instance of Briscoe's refusal to cooperate which requires this Court's intervention.

In the sixth, seventh and eighth counts of its counterclaim, Travelers seeks seventeen (17) days of interest on the settlement in the Las Vegas litigation because Briscoe allegedly delayed the consummation of the settlement for seventeen (17) days. Although Travelers argues that Briscoe breached the ADC with respect to the delay associated with the Las Vegas settlement, Travelers did not follow the procedures set forth in the ADC for declaring Briscoe to be in breach.[27]

Instead, Travelers continued with the relationship established by the ADC. A party's "failure to declare a breach of the contract and their continuance under its terms for more than a year after having learned of the breach constitute a waiver of their right to declare a forfeiture of the agreement for previous violations." *Ross*

*Systems v. Linden Dari–Delite, Inc.,* 62 N.J.Super. 439, 449, 163 A.2d 184 (App. Div.1960), *aff'd in part, rev'd in part,* 35 N.J. 329, 173 A.2d 258 (1961). There are no genuine issues of material fact regarding Travelers' failure to follow the default procedure set forth in the ADC. Briscoe is entitled to judgment as a matter of law. This Court grants Briscoe's summary judgment motion on these counts of Travelers' counterclaim based on Travelers' waiver of its rights to pursue these claims by failing to adhere steadfastly to the requirements of the ADC.

In the ninth count of its counterclaim, Travelers argues that Briscoe has failed to turn over Proceeds from the lease of a sky box at Giants Stadium and the rental of office space at 3 ADP Boulevard. Briscoe does not address this count in its motion for summary judgment.

In the tenth count of its counterclaim, Travelers asserts that Briscoe used advances for unapproved purposes and that Briscoe has misappropriated Program Proceeds. As discussed with respect to the ninth count of Travelers' counterclaim, Briscoe fails to address the tenth count of Travelers' counterclaim in its motion for summary judgment.

In the twelfth and final count of Travelers' counterclaim asserted against Briscoe, Travelers argues that Briscoe has breached its fiduciary duties to Travelers such that Briscoe has forfeited its rights under the ADC. Based on this breach, Travelers seeks the return of all benefits that Briscoe has received pursuant to the Program. As discussed *supra* with respect to counts one and two of Travelers' counterclaim, this Court refuses to enforce the forfeiture provision of the ADC.

26. Travelers has submitted correspondence between the parties regarding the disposition of the subject real estate. The parties' letters evidence both Travelers' requests that Briscoe sign off on the disposition and Briscoe's continued refusal to cooperate.

27. The ADC provides that, in the case of Briscoe's default, Travelers should file a court action or declare Briscoe in breach, at which point (1) Briscoe would be required to turn over all Collateral to Travelers, (2) Briscoe would forfeit all its rights under the ADC and (3) all monies owed to Travelers would become due and payable. *See* ADC ¶ 13.2.

In support of Travelers' arguments that Briscoe has breached its fiduciary duties, Travelers points to several instances of Briscoe's alleged breaches. This Court notes, however, that despite those breaches, Travelers continued with the Program and continued to receive funds from Briscoe under the Program. In addition, Travelers continued to loan Briscoe money under the terms of the ADC. Travelers did not pursue a claim for any alleged breach until Briscoe initiated this action. Travelers' failure to follow the procedure set forth in the ADC and its continuance with the contract "constitute a waiver of [its] right to declare a forfeiture of the agreement for previous violations."[28] *Ross Systems*, 62 N.J.Super. at 449, 163 A.2d 184. For the reasons discussed, Briscoe's motion for summary judgment as to Count Twelve is granted.

*Unenforceable Provisions of the ADC*

Briscoe seeks summary judgment dismissing Travelers' defenses based on paragraphs 13.2(b) and 6.3 of the ADC, alleging that those paragraphs are unenforceable.[29] Briscoe argues that those provisions are

unduly harsh and violate public policy. Briscoe's arguments are without merit.

■ The ADC is a complete, unambiguous, and bilateral contract. As such, Briscoe is bound by the terms of the ADC, and cannot now seek to invalidate portions that it contends are unfair. This Court will not apply equity principles on Briscoe's behalf to modify express contractual provisions even where the application of that provision is exceptionally harsh to Briscoe. *See Dunkin' Donuts of America*, 100 N.J. at 173–74, 182–85, 495 A.2d 66 (stating courts cannot apply equity principles to modify express contractual terms).

■ Briscoe argues that paragraph 6.3 is unenforceable as against public policy. Briscoe argues that New Jersey law prohibits the enforcement of such a forfeiture of claims provision. The Court finds that Paragraph 6.3 of the ADC is valid and enforceable. This paragraph specifies that Briscoe agrees to waive all claims that it may have against Travelers should a deficiency result upon the completion of the Program, except those claims based on actual fraud. ADC ¶ 6.3 (for full text *see*

**28.** "The principle that a fiduciary may be relieved from liability for the consequences of an otherwise surchargeable transaction as a result of legally sufficient validation thereof by all parties in interest is firmly rooted in the law." *In re Estate of Philip Lange*, 75 N.J. 464, 477, 383 A.2d 1130 (1978). "The requisite validation may either precede or follow the alleged infidelity of the fiduciary and may be expressly manifested or, in an appropriate case, inferred from the surrounding circumstances." *Id.* at 478–79, 383 A.2d 1130. (citations omitted). A fiduciary will not be shielded from liability unless the principal had "full knowledge of all the relevant facts and full appreciation of what was being done." In this instance, Travelers was fully aware of Briscoe's alleged breaches and fully appreciated what was being done. Rather than following the procedure set forth in the ADC for declaring breach, Travelers continued with the parties' relationship.

**29.** Summary judgment does not appear to be the proper vehicle to strike a defense. Summary judgment applies to claims, counterclaims and cross-claims. *See* Fed.R.Civ.P. 56(a). Rule 12(f) of the Federal Rules of Civil

Procedure provides that a party may make a motion to strike an insufficient defense. The rule provides that such motion shall be "made by a party within 20 days after the service of the pleading upon the party or upon the court's own initiative at any time." Fed. R.Civ.P. 12(f). Briscoe failed to bring the instant request within 20 days after service of Travelers' answer. Assuming Briscoe's motion to strike was timely, this Court concludes that it is without merit.

"[A] court should not grant a motion to strike a defense unless the insufficiency of the defense is clearly apparent." *Cipollone v. Liggett Group, Inc.*, 789 F.2d 181, 188 (3d Cir. 1986) (citations omitted). "[E]ven when technically appropriate and well-founded [motions to strike] often are not granted in the absence of a showing of prejudice to the moving party." *Board of Trustees of Trucking Employees of N. Jersey Welfare Fund, Inc. v. Gotham Fuel Corp.*, 860 F.Supp. 1044, 1054 (D.N.J.1993) (citing Wright & Miller, Federal Practice and Procedure § 1380, at 672–78). Briscoe has failed to clearly demonstrate the insufficiency of Travelers' defense. Thus, Briscoe's motion is denied.

*supra* at 20). Briscoe agreed to waive all claims against Travelers except those based on actual fraud in exchange for Travelers' forbearance of any deficiency resulting upon the completion of the Program.

■ At the time of the consummation of the ADC, paragraph 6.3 appeared to operate in Briscoe's favor because the parties anticipated that there would probably be a deficiency upon completion of the Program and Briscoe would be relieved of its indebtedness. In determining the fairness of the provision, the Court notes that each party was represented by counsel during the negotiations and Briscoe agreed to the waiver. "In New Jersey, it is the general rule, 'that where a party affixes his signature to a written instrument, such as a release, a conclusive presumption arises that he or she read, understood and assented to its terms.'" *Borbely v. Nationwide Mut. Ins. Co.*, 547 F.Supp. 959, 977 (D.N.J.1981) (quoting *Van Houten Service, Inc. v. Shell Oil Co.*, 417 F.Supp. 523, 527 (D.N.J.1975), *aff'd* mem. 546 F.2d 421 (3d Cir.1976)). The Court rejects Briscoe's argument that paragraph 6.3 is against public policy simply because Briscoe believes that its bargained for exchange is now somehow unfair.

■ "Public policy eludes precise definition and may have diverse meanings in different contexts." *Vasquez v. Glassboro Service Ass'n. Inc.*, 83 N.J. 86, 98, 415 A.2d 1156 (1980) (citations omitted). Contracts are usually found to violate public policy when they are contrary to "the public interest or detrimental to the common good." *Id.* "Contracts have been declared invalid because they violate statutes, promote crime, interfere with the administration of justice, encourage divorce, violate public morality, or restrain trade." *Id.* "An agreement is against public policy if it is injurious to the interest of the public, contravenes some established interest of society, violates some public statute, is against good morals, tends to interfere with the public welfare or safety, or, as it is sometimes put, if it is at war with the interests of society and is in conflict with public morals." *Garlinger v. Garlinger,* 129 N.J.Super. 37, 40–41, 322 A.2d 190 (Ch.Div.1974) (citations omitted), *order modified on other grounds,* 137 N.J.Super. 56, 347 A.2d 799 (App.Div.1975).

■ However, it is well recognized that public policy seeks to protect against "that which favors or is injurious to the public at large rather than the individual." *Rotwein v. General Accident Group,* 103 N.J.Super. 406, 416, 247 A.2d 370 (Law Div.1968). Here, Briscoe does not assert that the provisions at issue are contrary to the public good. Instead, Briscoe seeks to void the provisions simply because they are harsh. Such an argument does not satisfy the requirement for a showing that a contract provision is void as against public policy.

■ Similarly, Briscoe argues without specifying that Paragraph 13.2(b) is violative of public policy.[30] In this Court's

---

**30.** Paragraph 13.2(b) states:

[Upon events of default in ADC ¶ 13.1(a) occurring] Travelers may declare [Briscoe] to be in default in which event:

 \* \* \* \* \* \*

(ii) All of the rights which [Briscoe] may have and to which it may become entitled under this Agreement shall terminate including, without limitation,

 (aa) [Briscoe's] participation in the collection and/or disposition of the Collateral;

 \* \* \* \* \* \*

 (cc) Upon collection and/or disposition of all of the Collateral to become entitled to

receive the Net Proceeds Percentage Amount; \*\*\*

(dd) [Briscoe's] right to receive reports from Travelers, except as otherwise provided by law;

(ee) [Briscoe's] right to notice of sale or other intended disposition of Collateral, except as otherwise provided by law;

(ff) [Briscoe's] right to receive interest on or alternatively advances against an estimate of the Net Proceeds Percentage Amount as provided in paragraph 9.4;

(gg) [Briscoe's] right to receive the Minimum Guarantee; \*\*\*.

view, Paragraph 13.2(b) does not violate public policy. Although the Court finds that the provision is not void, it has determined that, based on the totality of the parties' conduct, the paragraph will not be enforced to deprive Briscoe of its rights pursuant to the Program.[31] *See supra* at 308–09.

## CONCLUSION

This Court grants Travelers' motion for summary judgment regarding Briscoe's Complaint because there are no genuine issues as to any material facts and Travelers is entitled to judgment as a matter of law. The Court also grants Briscoe's motion for summary judgment regarding Counts One, Two, Four, Five, Six, Seven, Eight and Twelve of Travelers' counterclaim because Briscoe is entitled to judgment as a matter of law with respect to those counts. Counts Three, Nine and Ten of Travelers' counterclaim survive this motion for summary judgment because there are genuine issues as to material facts existing as to those counts. Further, Travelers' claims regarding the overfunding of Briscoe's Pension Plan survive the instant motions for summary judgment. In light of this Court's grant of summary judgment regarding Briscoe's Complaint, Briscoe's motion for summary judgment dismissing various defenses asserted by Travelers is moot.

---

**31.** Despite Briscoe's alleged breaches under the ADC, Travelers has permitted the relationship to continue. Travelers even extended further non-program loans to Briscoe after the alleged breaches. Moreover, Travelers also has breached the ADC by failing to timely provide to Briscoe the estimates of its Entitlement called for in the ADC. The Court concludes that, based on the overall life and success of the Program, it would be inequitable to conclude that Briscoe forfeits its rights under the ADC.